The Administrators of SAMUEL J. READ, deceased, v. CHARLES CRAMER and ISAAC CRAMER.

The owner of a tract of land, with the boundaries of which he was unacquainted, caused it to be surveyed, run off into different lots, and a map made, preparatory to a sale at auction. On the day of sale the map was exhibited, and the property sold according to the map. A deed was prepared by the vendor, according to the map, for one of the lots, sold for a fifteen acre tract more or less; but the description afterwards, and before the execution of the deed, was altered by the vendor, at the instance of the purchaser, who was well acquainted with the premises, and who alleged that the deed as originally prepared did not cover all the land purchased by him. The effect of the alteration in the description was to pass twenty-seven acres to the purchaser not included in the plot or map exhibited at the sale, and which the vendor did not know belonged to him. The court decreed, that the vendee should re-convey to the heirs of the vendor, all the land exceeding the fifteen acres as described in the map by which the sale was made, and should pay the annual value thereof from the time he took possession under the deed.

It is among the first principles of a court of equity to correct mistakes and to prevent parties being injured in their property, and especially in their freehold, by any misapprehension or concealment of material circumstances.

Bill filed for relief on the ground of fraud; relief granted on the ground of mistake.

BILL for relief filed September 23d, 1836. The bill was originally filed in the name of Samuel J. Read, in his life-time, and

[Adm'rs of Read v. Cramer et al.]

the suit was continued in the name of his administrators after his death. The bill states, that in the year 1834, all the real estate of Charles Loveland, in the township of Little Eggharbor, in the county of Burlington, containing three hundred acres more or less, was sold by the sheriff of said county, by virtue of an execution issued out of the court of chancery, upon a decree of foreclosure, and that the complainant, having become the purchaser of the whole of the said real estate at the said sale, a deed therefor was executed to him by the sheriff, and the complainant thereupon entered into possession of the premises. That on the 5th of May, 1835, the complainant offered the said premises for sale at public auction, having first caused a map or draft thereof to be made by a surveyor; and on the day of sale, among other parcels, he offered for sale by the acre a piece of salt-marsh or meadow, as represented upon said map, containing fifteen acres, and caused it to be publicly proclaimed that the said lot, as represented on the map, would be sold for fifteen acres, and whether it contained more or less, the purchaser should pay for that quantity. That the lot so exposed to sale was cried off to Charles Cramer, one of the defendants, at the rate of twenty dollars and five cents per acre, amounting in the whole to the sum of three hundred dollars and seventy-five cents; who thereupon, in compliance with the conditions of sale, by a memorandum endorsed on the conditions, acknowledged himself to be the purchaser at the price aforesaid. That the complainant and his wife made and executed a deed for the said fifteen acres, as described upon the said map, and had it ready for delivery on the fourth Tuesday of May, 1835, when by the conditions of sale the deed was to be delivered; on which day the said Charles Cramer, accompanied by his father, Isaac Cramer, called to receive the deed. On reading over the description to Charles Cramer, as contained in the deed and drawn upon the map, he suggested a change in the description which would render the boundary more satisfactory, and avoid controversy with the adjoining proprietors, who were contentious men; whereupon the description was altered to meet the views of the purchaser, and

[Adm'rs of Read v. Cramer et al.]

a new deed drawn, executed and delivered. That soon after-wards the complainant was informed that he had been deceived by the purchaser, and that the tract as described in the deed, in-stead of fifteen acres, contained near fifty. That the complain-ant thereupon caused the said tract to be surveyed, and ascer-tained that it contained forty-two acres, being twenty-seven acres more than were intended to be conveyed. That the com-plainant was unacquainted with the boundaries of the tract pur-chased, and from the looseness and generality of the description contained in the sheriff's deed to him, he was unable to ascer-tain the same; and that the surveyor who run out and mapped the tract preparatory to the sale by complainant, and who lived in the neighborhood, was misinformed as to the extent of the complainant's title, and did not include in his map a part of the land owned by complainant, and which by the change of de-scription was included in 'the deed from the complainant to Charles Cramer. That the deed was executed by the complain-ant and his wife to Cramer with the intention and expectation of conveying fifteen acres, as described upon the map, whereas, by the false and fraudulent representations of the defendants, it was made to convey forty-two acres ; and that all that part of the mea-dow exceeding fifteen acres, was obtained by fraud and false rep-resentations, and without any consideration whatever. That complainant has offered either to repay the purchase-money and receive a re-conveyance for the premises described in the deed, or to confirm the conveyance, upon the purchaser paying for the ex-cess the price at which he purchased the fifteen acres, both of which offers were declined by the purchaser.

The bill prays, that the deed may be rectified according to the true intent and meaning of the parties, or declared inopera-tive and void as to the excess over fifteen acres as described upon the map ; or that the said Charles Cramer may be decreed either to pay for the excess of twenty-seven acres at the rate of twenty dollars and five cents by the acre, with interest from the date of the purchase, or to re-convey the said excess to the complainant, and to satisfy him for the proceeds thereof converted by the said

Charles Cramer to his own use from the date of the deed; the value to be ascertained by a master of the court.

The answer states, that the lot in dispute on the day of sale was offered as "a lot of marsh or meadow land, bounded by Wading river, the thoroughfare, and Isaac Cramer's line on the marsh, supposed to contain fifteen acres more or less," and was so bid for and bought by the defendant, Isaac Cramer. That the deed as executed conveys the land included within said boundaries, and no more. That no map whatever of the premises was exhibited to the defendants, nor did they or either of them see any map upon the day of sale, or hear any description of the premises except as aforesaid. The answer admits that the alteration in the description of the property contained in the deed, was made at the instance of the defendants, and that the deed after the alteration conveyed more land than was included in the description as originally drawn, but insists that the alteration was made in accordance with the description given on the day of sale, and denies that any fraud was practiced, or false representations made in relation thereto by the defendants.

The cause came on for final hearing at July term, 1839, upon the bill, answer, replication and proofs.

*J. Wilson*, for complainants. This bill is brought for relief against a deed conveying land, on the ground that the deed is not in accordance with the contract of sale. The land sold is a tract lying within certain bounds specified in the bill, and it was sold for fifteen acres more or less; whereas the deed conveyed not only that tract, but also about twenty-seven acres more, not included within those bounds, but lying adjoining. The bill alleges that the variance between the deed and the contract was produced by certain representations of the defendants made with intent to deceive and defraud the grantor.

The deed is variant from the contract; it does not carry out the intention of the parties, nor execute the contract it was intended to execute. Equity will therefore correct it according to

[Adm'rs of Read v. Cramer et al.]

the circumstances of the case.   *Hunt* v. *Rousmaniere's Adm'r*, 1 *Peters' Rep.* 13.

But the defendants, by their answer, allege that the contract of sale was for the twenty seven acres as well as the fifteen acres; that general Read, the vendor, in making the contract, used a description which includes the whole, and that therefore the deed is correct.   But if this be admitted, the complainants are still entitled to the relief they seek.   For from the evidence it is clear, that at the time of the sale, and long after, general Read did not know that he owned the twenty-seven acres, but believed that his whole estate there was the tract of fifteen acres.   He had never seen the land, and when he used the description and bounds given in the deed, the evidence fully shows that he believed that those were the bounds of the fifteen acres, and that he also believed he owned no more land there.   If, therefore, the position of the defendants be true, that general Read sold other lands, yet it is plain that he did so under a mistake, and an entire misapprehension of his rights.   In such cases equity will always grant relief.   *Bingham* v. *Bingham*, 1 *Vesey, sen.* 126; *Evans* v. *Llewellyn*, 2 *Brown's Ch. R.* 150; *Calverley* v. *Williams*, 1 *Vesey*, 211; *Hitchcock* v. *Giddings*, 4 *Price's Exch. R.* 135.

Parol evidence is admissible to show *mistake* in a deed, as well as *fraud*.   *Henkle* v. *Royal Exchange Co.* 1 *Ves. sen.* 317; *Simpson* v. *Vaughn*, 2 *Atk.* 31; *Gillespie* v. *Moon*, 2 *Johns. C. R.* 593; *Washburn* v. *Merrill*, 1 *Day's Cases in Error*, 139.

*Vroom*, for defendants.   The bill seeks relief on the ground of *fraud*.   All that is said about *mistake* or *misapprehension*, is to be found only in the argument of counsel, and forms no part of the issue between the parties.

The defendants insist that there is no *fraud* on their part, and that no relief can be granted on that ground.

It is not improbable that there has been a *mistake*.   General Read probably conveyed more land than he supposed he convey-

37

[Adm'rs of Read v. Cramer et al.]

ed. But this is not a case for relief in equity. The principle of the cases cited on the other side is not denied, but they do not meet this case. For if by reasonable diligence a party might have been informed, his mistake is no ground of relief in equity. 1 *Fonblanque, Book I., chap.* iii. *sec.* 3; 4 *Johns. C. R.* 566; 1 *Story's Equity,* 157, 159, 160; 9 *Vesey,* 275; 3 *Cases in Chan.* 56, 74, 103, 114.

If there is any mistake here, it was not occasioned by the defendants, but was a mistake of general Read, and due diligence on his part would have corrected it.

*I. H. Williamson,* for complainants. This is a clear case of fraud on the part of the defendants, as appears by the testimony taken. But even if there were no fraud, still the *mistake* in this case is a sufficient ground of relief. *Langley* v. *Brown,* 2 *Atk.* 203; *Baker* v. *Paine,* 1 *Vesey, sen.* 456; *Calverley* v. *Williams,* 1 *Vesey,* 210.

These cases are also an answer to the position of the defendants' counsel, that there has not been due diligence.

If a bill is filed for relief on the ground of *fraud,* relief may be granted on the ground of *mistake* if a proper case be made out. 2 *Cond. Excheq. Rep.* 55; 2 *Ball and Beatty,* 152.

THE CHANCELLOR. Samuel J. Read, in the year 1834, purchased at a sheriff's sale a farm at Little Eggharbor, in the county of Burlington. The property formerly belonged to Samuel Loveland, and was sold under a decree of this court to satisfy certain mortgages. After making this purchase, general Read determined to sell off the property in parcels at auction, and for that purpose he advertised it for sale in the spring of the year 1835. Not knowing much about the premises, previous to the day of sale he sent Robert Leeds, a surveyor, to run out the land and make a map of it; this he did, and furnished the map to general Read before the time fixed for the sale. On this map there is a tract lying south of a thoroughfare, said to contain about fifteen acres, which at the auction was sold to Charles Cramer, one of the de-

fendants; and the controversy in this cause relates entirely to the sale of this lot.

The bill charges, that the complainant sold this lot according to the map, for a fifteen acre tract, more or less, and with the agreement that the purchaser should pay for fifteen acres whether it turned out to be more or less. That after the sale, he made out a deed according to the map, when, by the fraud and misrepresentation of the defendants, he was induced to vary the description of the premises, and besides the fifteen acres which he really sold, he has included twenty-seven acres additional which were never sold, so that the defendant, instead of fifteen acres, has a deed for forty-two acres. The prayer of the bill is, that the deed may be corrected, or that the defendant, Cramer, may re-convey the twenty-seven acres and account for the profits of this excess of land during the time he has possessed it.

The answer denies that any such map was exhibited at the sale, or that the defendant bought by any map, and on the contrary insists that he bought the land by certain boundaries which were publicly announced by the complainant at the time of the sale, and by which boundaries he is entitled to all the forty-two acres described in the deed.

There is a mass of evidence taken in the cause, agreeing in many particulars but widely differing in others, so that the main difficulty is to arrive at the true state of facts. This was a public sale, and at the distance of two years and a half persons at the sale are called upon to state what took place. In such cases it will always be found, that among perfectly upright men their stories will differ, and perhaps materially. I deem it unnecessary to go over the whole evidence. I have examined it carefully, and shall now content myself with stating the conclusions to which I have come, and the principles on which the case must be decided.

In the first place, I consider it fully made out by the evidence that general Read sold by the map. The answer denies that any map of this lot was exhibited at the sale to the knowledge of the defendant who purchased, or that he heard of any; but that the

map was exhibited, is stated by almost every witness, and by some of them it is said that at the time the defendants were not more than ten or twelve feet off. The defendants' own witnesses admit that the map was exhibited at the sale.

It is very manifest that general Read himself, at the time of the sale, did not know the extent of the property he owned there. He thought he owned only the fifteen acres, or thereabouts, south of the thoroughfare, when in truth he did own forty-two acres. He had purchased the entire farm a short time before, and without any knowledge of the metes and bounds himself, had sent a surveyor to lay off the land for sale from the best information he could derive from others. The surveyor who made the map testifies, that he only put on the map the fifteen acres, *which* he supposed the extent of the Samuel Loveland line. And this was the extent of the line for a period of forty years, but Samuel had bought another strip of Charles Loveland, which carried his line down to Cramer's land and the ditch.

In the second place, general Read, when he made out the first deed, made it from the map, and when he made the alteration in the description in the second deed, he did so from the information alone which he derived from the defendants, and from the confidence which he reposed in them. They indeed stated to him that his description did not embrace all the land which they purchased, but they did not explain to him in an open, frank manner, as they were bound to do, the extent they claimed. He had no idea that this new starting-place in the description, made the difference between fifteen and forty-two acres. Had they so explained it, his eyes would have been opened, and the deed would never have been executed as it was.

In the third place, although the evidence is contradictory on this point, yet from the fact that the defendants' witnesses swear positively to it, and among the rest the auctioneer himself, and the complainants' witnesses only speak negatively that they did not hear it, I must believe that general Read, when he was called upon for the bounds of the land at the auction, did say that it bounded on the thoroughfare, Wading river, Cramer's line and

[Adm'rs of Read v. Cramer et al.]

others; and that he particularly mentioned *Cramer's line.* But it is equally certain that he did so without understanding where Cramer's line was, and without any intention of going beyond the fifteen acres set off in the map.

In the fourth place, as the land was sold for fifteen acres, more or less, although general Read did say they were only to pay for that quantity if the land turned out to be more or less, yet the defendants, as reasonable men, could never have supposed that he intended in a sale of fifteen acres to embrace a tract of forty-two acres. The difference was too great. They must have seen, as other witnesses swear they did, that he was laboring under a mistake when he declared he sold to Cramer's line. The expression he used was clearly intended to cover a miscalculation of a fraction, or a few acres at most : it never could have been intended to cover so large a difference as twenty-seven acres. The defendants resided in the neighborhood and knew all about the land, and general Read did not.

In the fifth place, the price at which the land sold was sufficient to have satisfied the purchaser of the mistake. The land sold was worth the price paid per acre, and could the defendants have believed they were to receive twenty-seven acres in addition, worth at least fifteen dollars per acre ? This was enough, surely, to have demanded an explanation on their part.

In the sixth place, the offer made by general Read when he discovered the mistake, was a perfectly fair and reasonable one. He said in substance, By your directions I have given you a deed for more land than I intended. I supposed you to be fair, honest men. You must re-convey the land and I will return you what you have paid, and thus put an end to the whole contract, or you must pay me the same price for the additional acres that you paid for the others, or I shall seek my redress in the courts of law. The defendants refused the proposition, and it is my duty, upon this state of facts, to settle the rights of these parties according to the principles and rules of this court.

If this land was sold, as I believe it was, from the map, the twenty-seven acres were not in it at all, and therefore could not

have been sold. When the deed was made, the twenty-seven acres were put in it from the representation alone of the defendants and from the confidence reposed in them, and it covers that much more land than was intended, or than would have been put in, had the grantor at the time been informed of all the circumstances attending the case. As the defendants knew the fact that the alteration in the description would take in this whole tract, they should have so explained it to the grantor.

It is among the first principles of a court of equity to correct mistakes, and to prevent parties from being injured in their property, and especially their freeholds, by any misapprehension or concealment of the true state of facts. The cases are numerous where relief has been afforded under like circumstances. *Bingham* v. *Bingham*, 1 *Vesey, sen.* 126; *Gee* v. *Spencer*, 1 *Vernon*, 32; *Evans* v. *Llewellyn*, 2 *Brown's Ch.* 151; *De Riemer* v. *De Cantillon*, 4 *Johns. Ch.* 88; 1 *Story's Eq.* 159, 160.

Charles Cramer has, in my opinion, a deed for twenty-seven acres more land than he should have, and I shall decree a reconveyance from him to the heirs at law of general Read, for all the land in his deed beyond the fifteen acres described on the map under which the sale was made, or that the present deed be rectified, as may be most convenient for the parties, the result being the same in either case; and that he pay the annual value of the excess from the time he entered into possession, to be ascertained by a master. The bill as to Isaac Cramer must be dismissed, there being no ground for a decree against him.

As some reason was given by the course of general Read at the auction, for the purchaser to suppose the land sold bounded on Cramer, though not enough, in view of all the circumstances, to justify me in letting him hold to that line, I do not think he should pay costs. The decree will be without costs.

Decree accordingly.